oral argument not to exceed 15 minutes per side. Mr. Clark for the appellant. Good morning, Your Honors. Dennis Clark on behalf of the Defendant Appellant Victor Garcia. I would request, Your Honors, that I have two minutes for rebuttal. Our principal contention on appeal is that the evidence is insufficient to prove possession of a firearm. In the prosecution's case, the essence of the case was that while Mr. Garcia was running, he was observed by a police officer to have dropped objects. There was no description of those objects. Later, a few minutes later, there was a weapon, a firearm, found in the area where the objects were seen to have dropped. It is important to know in this case, and it's the essence of the defense and the essence of our position on appeal, that there was no witness, no police officer or anyone else that observed Mr. Garcia in the possession of a gun or any object that looked like a gun or was described as a gun. He was not the owner of the gun. There was no testimony that he made any admissions or statements admitting ownership, use or possession. There was no gun or ammunition found on his person. He was arrested in a very dark, wooded area late at night in an area where there was only an unoccupied building. There was no testimony he lived there or had any ownership interest or any dominion or control over the area. Importantly, again, no arresting officer, no police officer, no witness of any sort, no eyewitness saw him with a gun or even a shiny metallic object or a dark, long object or any kind of object that appeared to be a gun. But why isn't it pretty good circumstantial evidence that he dropped something? There's no question, Your Honor, that the evidence claims that he dropped something. But, again, the common thread through the sufficiency cases, both in this circuit and others, is the observation by the police or an eyewitness who is credible of a gun or an object fitting the description of a gun in the possession of the defendant. Has our court or any other court ever said, I realize some of the cases, you're right, I mean, you see someone drop something and it's described more than something, so the description goes not necessarily to a gun but, you know, shiny or long and dark or something. But is there ever a court that said in a sufficiency case if the officer or the witness seeing something be dropped or the court has said, well, listen, for sufficiency purposes, you've got to say something along the lines of either a gun or what looked like a gun. And if you don't say that, you don't have enough evidence. I believe so, Your Honor. As a matter of fact, I believe in your very own case where you wrote the opinion in U.S. v. Arnold. I believe that that case speaks right to that very point. And specifically in that case, there was... I'm going to bet you're not grasping the distinction between sufficient and necessary. But keep going if you think you are. Okay. There were two cases in that particular opinion that were distinguished. One was from this circuit, the Beverly case, and another from the Fourth Circuit, the Blue case. And in both of those cases, there was this common thread of an eyewitness observing a gun or what appeared to be a gun in the possession of the defendant. And not in the Arnold case where you made a distinction. Because in that case, there had been a situation where there was a woman who was actually threatened by Mr. Arnold. She saw a weapon in his hand, a handgun in his hand, minutes before the police discovered the handgun under his car seat. And you talked about, in that particular case, the evidentiary gap that existed because no eyewitness testimony connected the gun or an object looking like a gun to the defendant. So this is the same evidentiary gap that exists in this case. And I would submit that sustaining his conviction, that is Garcia's conviction, would lower the evidentiary bar for possession cases. Mr. Clark, this discussion makes it sound like this case is somehow quite unusual. But actually, it's a pretty typical case. I mean, it's a pretty common fact pattern that officers see an individual throw something or get rid of something. The something is later found and the inference is permissible that the something found and the defendant are connected to each other in a way that amounts to possession. I mean, this is a pretty routine case. But you are, in my experience, but you seem to think it's something anomalous. What makes it different from all these cases that we see all the time of this type? Well, Your Honor, in the actual possession cases, as well as in the constructive possession cases, it seems that every case that I've read has this, as I indicated earlier, the common threat of somebody seeing a weapon or what appeared to be a weapon or firearm in the possession of the defendant. That didn't occur here. Judge Gibbons? No, no, no. But it's really typical for officers to see something of an undefined nature thrown or gotten rid of, whether it's drugs, whether it's a gun. I mean, that's just a common fact pattern. Well, in the constructive possession cases, usually that arises where there is something seen of that nature. However, there has to be more than mere presence or mere— Well, actually, those cases fit much more naturally into an actual possession mold because of the fact that at least at the point— you know, the inference is that the defendant actually possessed it at a given point in time. I mean, once it's gotten rid of, so to speak, the defendant no longer possesses the ability to control it, which is necessary for constructive possession. Now, you might say he had the ability to control it at the time he actually possessed it, and that's always a possibility, you know, the point at which actual and constructive possession intersect. But, you know, actual possession is a much more natural concept for this kind of fact pattern, isn't it? It is. And I contend this is an actual possession case. And that's why I'm saying, based on the case law in this circuit as well as others, there is this common thread that must be shown in order for there to be sufficiency of the evidence. But what's your answer to Judge Gibbons' question? I think you're able to do this with guns, this common thread argument you're making. Yes. But what's your answer to her question about their officers are chasing somebody, an object is dropped, that's all they can say, and they find a baggie of white cocaine. I mean, white powder, it's cocaine. That's the fact pattern that happens all over the place. No one bats an eye about saying you saw them drop something, you get there a few minutes later, it's cocaine. Well, I think it's an analogy. How is that different from gun? Both times it's an object. They didn't say I saw a white powdery substance be dropped. They saw an object be dropped. So that's the line of cases she's talking about. Because there's usually other factors. There's at least another factor here. The gun was found not completely immersed in the snow, and it also had drops of water on it permitting the inference it had been recently in a location other than the location where it was found. Well, on that point, Your Honor, as I indicated by appending the photographs to our brief, we contend that the snow actually covered, it's clear from the picture, the handle and the barrel. Now, recall that the testimony... You can argue that's in your favor. The prosecution can argue that, well, it was partially, you know, snow's soft, it's heavier, it would naturally have been partially immersed, but the fact that it's not completely immersed would tend to indicate that it had been recently placed there. Well, the officer that found this said specifically, this appeared to have settled on top of the snow to indicate, again, because it hadn't snowed recently, it hadn't snowed at the time, it wasn't snowing at the time, as if it had settled on top, the specific quote was it settled on top of the snow. Now, when you look at the photographs, that can't be, that's not possible. It's clearly, most of it is buried under the snow, which is another indication that it had been there for some period of time. It was buried, and the photographs clearly show that. As I indicated in the brief, pictures worth a thousand words, that clearly there's a major discrepancy between the testimony of the police officer and what the photograph depicts. How would you compare this case to the Bailey case? Well, the Bailey case was clearly a direct physical control situation. In that particular case, again, the police did not see Bailey holding a gun prior to his arrest or anything that looked like a gun. So it's very similar in that regard. And there was no, there was an evidentiary gap in that case too, and specifically it was that, that there was no testimony by a police officer or anyone else. And oftentimes in these cases, the description is given as a shiny metal object or a dark object or something that had the physical description of a gun. None of that occurred in Bailey, none of that occurred here. So it's very, very similar. And there was no question but that Garcia dropped his hat, is that correct? There was evidence that a hat was dropped and found, but there was no admission that was his, nor was the hat ever admitted into evidence. He was concerned about his hat, wasn't he? There was a statement that he was concerned about a hat, that is correct. And the hat was in close proximity to the gun, right? It was. And something else, and we talked about other things that are shown or not shown in these kinds of cases, in a gun case as opposed to a drug case, there was no gun residue testing here, no fingerprints found, no DNA testing on the gun. And also it's important that when the 911 call was made here, the person who was seen to have had a gun or thought to have a gun by the caller was wearing an orange coat. That was the description, very clearly, very clearly by the witness said that. However, Mr. Garcia had a white coat on, and it was clear he did not fit the description of the individual who was observed by the 911 caller. It's just one more thing. Of course the charge is not firing shots. That is correct. But I'm talking in terms of what else might there have been, and it's the same thing in a drug case or in a constructive possession case where we have so many other things usually looked upon. For example, I mean furtive moments, excuse me, furtive movements, disobeying a police officer, something found in plain view, something matching ammunition found on an individual, something matching the object that was found, like an instance where drugs are thrown. Some person may have drug residue on his hand. It would be something else besides the actual throwing of something that indicates dominion and control or actual possession. Now since I only have a few seconds left, I just want to touch upon very briefly. I do have, and I'll rely on my brief for my argument concerning the prosecutor's improper vouching argument, and also I think it's important that the evidence here, excuse me, the sentence here was substantively unreasonable for three separate reasons that I've elicited, the failure to follow the 3553 factors, basically the unreasonable weight driven to the criminal history here and the impermissible factor that the judge relied on in sentencing. One last question. What inference was the jury entitled to draw from the fact of Mr. Garcia's flight? I think it's certainly an inference that they can take into consideration, Your Honor. Did the judge give an instruction about knowledge of guilt if one flees? I would have to double check that. I think so, Your Honor. I did not try the case, but I don't. It doesn't matter whether the instruction was given. It's just that it would be a typical instruction to give. There was, interestingly, this was some contention in the testimony, and the police officer clearly said, I think at least once if not twice, that it was not uncommon for individuals in that area to run when police appear. It's very common as a matter of fact. Thank you. Thank you. May it please the Court. Tessa Hess-Miller representing the United States. Your Honors, I'd like to start with the sufficiency of the evidence appeal since that comprised the majority of the argument by the appellant here. The Court must affirm. The Court must affirm unless the Court finds that no reasonable jury could have convicted based on the evidence before it. The evidence supporting the jury's verdict of guilty included quite a few different elements that the Court has already touched on, but I'd just like to highlight for the Court here. Going chronologically, first there was a 911 caller who heard approximately three shots, one closer to her residence and approximately two further away. She looked out the window and she saw a person in an orange coat running west down a hill. The police arrived two minutes later at 1142 p.m., and when the police arrived they saw the defendant see the police car and take off at what the witnesses described as a full sprint. The defendant took off sprinting and clutching his waistband as the police chased him, and the defendant was wearing a white coat. The defendant jumped over a fence into a fully enclosed property behind an abandoned house, an unoccupied property that was not a pathway, was not an ingress or egress to anything. In fact, the police described it as a place that was not used, a place that was not common to see people using that space. He jumped over the fence and got caught on it, which gave the officer an opportunity to catch up to him, and as he stumbled he again tripped in the brush and vines that were in this abandoned property, and as he fell he was apprehended there. Now, in the chase, as he was jumping the fence, the officer saw objects fall from his person. Isn't your friend on the other side right that if you look at our cases, there's this distinction between sufficient and necessary, but that most of our cases, well, I think all the gun cases, I could be wrong, when you have this throwing something while you're being chased, didn't the officers usually describe it as more than just an object in our cases, which I think is why Judge Gibbons' question is a really good one. But aren't there cases where all you have is object thrown and then you find drugs and that suffices? Yes, Your Honor. Any of those cases? Well, the case that I would present to the court as being the most useful here is the Wright case, Your Honor, and it's not a case where the defendant is running, but it's quite similar in terms of the other facts. And in that case, the conviction was upheld in the face of an insufficiency of the evidence claim when there were two men outside of a house who both went into the middle of the road and bent over, picked up an unidentified object, went over towards a car, bent over, and then went back to the porch. And the officers didn't see what that unidentified object was. They didn't describe it as a black object or a silver object or a long object, as they do in some other cases. And the court held that there was sufficient evidence for both an actual possession and a constructive possession-based conviction. Was this tried as an actual possession case or constructive or both? This was tried as an actual possession case, Your Honor. The instruction was given for both, that the jury can consider actual or constructive possession, but the government's theory is that it's an actual possession case. So how would you deal with the Bailey case? The Bailey case, Your Honor, came down to the testimony of one eyewitness who changed her story at trial. And the prosecution relied on her statement closer to the time of Bailey's arrest where she said that she saw him with a weapon, or she gave more description that the prosecution wanted to rely on, and then she changed her story at trial. The prior statement was only able to be used for impeachment, so it had no substantial value to the case. And the court in Bailey stated that it was then left with the evidence that Bailey was seen evading or fleeing the police. So Bailey is really different in a few ways. First, that there is more evidence that we have in the Garcia case than there was in the Bailey case. So you're saying in the Bailey case there was not evidence that something was dropped? Is that the more evidence that we have here, or what? Well, in the Bailey case it was an issue of there being multiple people who could have been the owner of the firearm. In the Bailey case he was driving a stolen car that somebody else had lent him. Couldn't there be multiple people here, given that this was an abandoned plot? There could be. That could have been. That's a plausible hypothesis, that it was someone else's. But the fact, the placement of the snow and the testimony that it had snowed within the last 24 hours. But looking at the picture, it looks like the firearm is half buried in the snow, correct? Yes, Your Honor. Yes, just the handle is buried and the tip of the barrel is buried. However, using the common sense, the jurors could rationally have found that climbing over a fence and dropping an object of 2 to 3 pounds from waist high into fresh snow could have buried parts of that metal firearm. And the droplets are really quite important here. The fact that there are water droplets on a piece of metal in the snow at night indicates that, and the temperature was 23 degrees, indicates that this weapon had not been sitting in the snow for any period of time. The officers also testified that the only footprints that seemed to be in the area were those of Garcia and of the officers who pursued him. And the fact that it was a completely enclosed property, all of those facts indicate that a reasonable jury could have found guilt beyond a reasonable doubt, as they did here. The other thing I just want to... You know, Wright is an unpublished case. Do we have a published case? That's why I'm interested in the analogy. I share Judge Gibbons' instinct that there are a lot of these cases where officers are following, chasing, something's thrown, and it turns out to be drugs, and it doesn't take much to still have sufficient evidence for conviction. Yes, Your Honor. I agree, and I think, as Judge Gibbons pointed out, that is a common, that's not an uncommon case. I don't have a drug-in-pursuit case. I think that the Williamson case is quite similar. It's a gun case. It's not a drug case. But in Williamson, the defendant was seen fleeing, also clutching something to his body, and dropped a black object. Williamson is also not published, correct? That may be the case, Your Honor. I have the site. The brief has an appendix. Yes, Your Honor. There's also the Barnett case. I don't have in my notes if that is published or unpublished, but, again, it's a case where someone's being pursued and throws an object. In that case, it was a long, black object that looked like a rifle. So there are different ways that the witnesses are describing these items, and in none of the cases has the court ever held that describing the color of the object is the critical element. Did you look into the analogy to the drug cases? I didn't, Your Honor. I understand that argument. Because, you know, one thing about the drug cases is that you usually can't tell anything about what's being thrown. I mean, a baggie of cocaine from a distance is not discernible as anything other than an object, usually. I would agree, Your Honor. So you did not look at those? I don't have citations for you, Your Honor, but I think it's common knowledge that there are a multitude of cases just like that in drug cases where officers arrive at a residence and a baggie or something is launched from the second floor and they find drugs in the bushes. I don't think that that's an uncommon case, where people are driving and there's a traffic stop and something goes out the window where drugs are found. I think that those are common and probably more analogous, Your Honor, than a lot of the more fact-specific cases where a gun is thrown. But there is no difference, as far as I'm aware, between cases where a gun is thrown and drugs are thrown, where you need more evidence to show that the gun was possessed by the defendant than that the drugs were possessed by the defendant. Do you know whether there's any Supreme Court case on either guns or drugs where they're saying that it's enough for there to be testimony from an officer chasing someone that the officer saw an object thrown with nothing more and then the object found? I don't have a Supreme Court case for you, Your Honor. I don't. I was just curious. Yeah, I don't have a citation for the court at this time. I also wanted to address the issue of the instruction on flight. There was an instruction on flight that was given by the court. It was a specific instruction that the jury could infer that the defendant fleeing may indicate his consciousness of guilt. However, it may also indicate that he may be running for some other reason. And this really ties back to the Bailey case, because in Bailey the court was left with the fact the defendant was fleeing, and that defendant was found with two bags of cocaine in his pocket. So the court decided that Bailey could have been running quite possibly because he had the cocaine in his pocket, whereas in this case there was no contraband found on the defendant other than the gun, which was found nearby. He did not have bags of cocaine in his pocket or any other type of contraband. There were no warrants for his arrest at that time. So the evidence here is much stronger in that his potential guilt of consciousness is more indicated by his flight because he had no other reason to be running. But there was the testimony, your opponent says, of two officers that people generally ran when they approached? Yes, Your Honor. It seems from the record that this was a neighborhood where there was quite a bit of violence. The first eyewitness who testified said that her car had been shot at multiple times in front of her house, and she had called the police before. So it seems that this was a high-crime area. It seemed that there was a lot of crime and that the police were probably frequently being called. I don't know that it's a point against the government that Mr. Garcia took off running simply out of pure fear of the police. I think that a reasonable jury could have found that he took off running because he was in possession of this firearm that had recently shot, expended two of the five rounds that were found inside of it. The other point, Your Honor, about the sufficiency of the evidence that could lead a reasonable jury to convict are the defendant's concern for his hat, which was found co-located with the firearm. The hat was more on top of the snow than the firearm, but the hat's also a piece of fabric that's lighter than a firearm. You say it was co-located. Could you be precise about how close it was? Approximately 18 inches, Your Honor. And both the hat and the gun were found at the point at which the defendant jumped the fence  The appellant also mentions that there was a lack of certain testing, DNA testing, shot residue testing, fingerprints. Fingerprint testing was done, but none was found. No fingerprints were found, and the expert described that that was not uncommon for this type of material, this type of grip, and this type of temperature. And the witness has also explained why the other types of testing were not done in this case. I'd like to briefly address, Your Honors, if I may, the issues of the improper statement allegations and this sentence, if I may. The statements in closing argument were not improper. The government maintains that the statements were entirely proper and in line with the judge's instructions, which preceded the closing argument. Now in the instructions, the judge asked the jury to decide for themselves how believable each witness is. And he said, ask yourself how believable the witness is in light of all the other evidence. And he asked the jury, was the witness testimony supported or contradicted by other evidence that you found believable? And that was the tenor and the theme of the closing argument and the rebuttal  of the jury, not because of the prosecutor's personal opinion and not because of the backing of the United States Attorney's Office, but because there was other independent corroborating evidence that the government mentioned throughout closing argument to leave it up to the jury to connect those facts to the credibility of the witness. The prosecutor, as I understand it, said, and he told you the truth about what happened that night, right? Yes, Your Honor. So why isn't that vouching for the witness? Because the context of that statement, Your Honor, was that the jury can tell that his statements were truthful because it's backed up by the video, by the photos, by the maps, by the other officer's testimony and the eyewitness testimony. If the prosecutor said, I tell you, jury, he was telling the truth, would that be vouching? If it was left at that and nothing more, Your Honor, it could be found to be vouching. So how is this any different? This case, Your Honor, is just tracking what's perfectly allowable and, in fact, instructed directly by the judge that the jury can judge the credibility of the witness based on the... So why does the prosecutor say he's telling the truth? He told you the truth about what happened that night. And then he goes on to say, and you can determine that he's telling the truth because of X, Y, Z that he said and other evidence that came in, Your Honor. If he had said, I believe he's telling the truth or he has... So there's a difference between a prosecutor saying, I believe he's telling the truth and he's telling the truth. There seems to be, Your Honor, a difference in the case... May I finish, Your Honor? Yes. There does seem to be a difference in the case law, Your Honor, that if the prosecutor talks about, I believe and leaves it at nothing more or that the witness has no reason to lie or it will affect their plea agreement, that crosses the line to vouching. But instructing the jury that they can find a witness is credible because of all of the other independent evidence does not constitute vouching. Thank you. Thank you, Your Honor. In answer to your question, Judge Moore, I do not believe that at least we have not been able to find any case from this circuit or the other circuit or the Supreme Court of the United States which would allow the sustaining of the conviction in this particular kind of situation. Why would a baggie of drugs versus a gun be different? So just assume all you have for the sake of argument is you see an object dropped, you later pretty close in time find a gun in one case, the second case you find a baggie of drugs. Just assume for the sake of argument there is case law out there that says the baggie of drugs, that is enough if you saw an object dropped. Can you think of a reason why you would distinguish between possession of drugs versus possession of a gun? Well, Your Honor, first question. Maybe there aren't those cases. Maybe those cases don't exist. Assume the worst. Assume the worst. Assume they do exist. Can you think of a reason why the gun possession case would be different from the drug possession case? If such a case like that, it might be hard to distinguish, Your Honor, but I do know that all the gun cases and the drug cases that I'm aware of, there's always the distinguishing factors. There's additional factors of evidentiary nature, and that's why, again, in the Arnold case, you talked about the evidentiary gap, and I think that all the drug cases I'm familiar with and there is a distinction in that for some reason guns are treated differently than drugs and just in the way that the law reviews it, and it's been clear. Is the clarity of the case explicit about that? I don't know, Your Honor, frankly, if there's an explanation of the difference between the two. I can't point to anything right now. I'm not accepting that there is a difference, but I thought it would be helpful if some court talked about that. It would be, but I'm not familiar with it. But I do know that the two cases that were mentioned by the prosecution, the Wright case and the Williams case, are unpublished. I don't know of any published cases. But I do know in the drug, I think I've read every gun case there is, and it appears that this evidentiary gap is talked about, and there's a clear distinction between the cases found to be sufficient scenes of evidence and those insufficient, and that is either an eyewitness seeing an actual gun in the possession of the defendant or an object described as a gun fitting the description of the gun, a shiny metallic object or a dark object looking like a gun and so forth. Clear distinction there. Also, I just want to mention on the photograph, I'm sorry, my time is up. Your time is up. I'm sorry. Thanks very much. And we understand that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client. Well, thank you, Your Honor. It's been a pleasure. The case will be submitted. Would the clerk call the next case, please?